Joseph A. Sarafite, J.
In this special proceeding, petitioner landlord seeks to have declared unconstitutional certain sections of the Administrative Code of the City of New York and a resolution of the Board of Health. The provisions under attack are code section 564H5.0 et seq., and a resolution dated January 29, 1965. Pursuant to these provisions, respondent has promulgated an “ Emergency Eepair Program ” affecting multiple dwellings. More specifically, petitioner assails respondent’s practice in making repairs of conditions declared by the Board of Health to be health nuisances and in connection therewith— upon the landlord’s failure to reimburse the city for the expenses incurred — demanding that tenants pay rents over to respondent instead of the landlord. Petitioned also seeks to enjoin prosecutions of landlords by respondent for violation of the related provisions.
The following facts gave rise to this proceeding. On December 23, 1966, one of petitioner’s tenants discovered a stoppage in her toilet which caused it to overflow. She advised the landlord of the condition but petitioner refused to repair it. Four days later, the tenant reported the condition to the Department of Buildings. Upon receipt of the complaint, an employee of respondent allegedly notified the petitioner of the reported condition. On that same day, one of respondent’s inspectors examined the toilet. His findings were then forwarded to the Department of Health which certified —on December 27 — that the existing condition constituted a health nuisance. On December 28, the toilet was repaired by a contractor hired by respondent. The bill for the repairs was $58.10. ■
Thereafter, on February 28, 1967, respondent sent a notice to petitioner advising it of-the repairs and requesting reimbursement. Together with that notice were a notice of a “ rent *39 impairing violation”, and a copy of a form letter prepared by respondent. The letter, addressed to the tenants, demanded their rent on the ground that the city had made certain emergency repairs and the landlord — although requested to do so — had failed to pay the city for the work performed. Petitioner having however, "tendered its check to the city for the amount demanded, the respondent never sent this letter to petitioner’s tenants.
Petitioner, however, denies any knowledge of the condition or its repair until it received respondent’s notices in 1967. Further, it claims that the stoppage was caused by the willful act or negligence of the tenant and in such event, under the terms of the lease, the landlord is not obligated to repair such condition.
In sum, petitioner claims that the emergency repair program and the provisions of the code upon which it is based work a denial of equal protection of the laws, an unconstitutional impairment of the landlord’s contractual rights, and a deprivation of property without due process.
Respondent contends, on the other hand, that the implementation of the emergency repair program was a valid and lawful exercise of the power vested in the city and its Departments of Health and Buildings — pursuant to chapter 22 of the Administrative Code and a Board of Health resolution — to remedy conditions presenting an immediate danger to the lives of occupants of dwellings.
Chapter 22 of the Administrative Code defines the term “ nuisance ” — which is stated to “ embrace public nuisance ”— as constituting that which is dangerous to life and detrimental to health, and declares all nuisances “illegal” (§ 564-15.0); declares it to be the duty of every owner to keep his premises free of nuisances (§ 564-17.0); states when a building, place, or thing is declared a public nuisance by the Board of Health, an order of abatement may issue (§ 564-18.0); designates any agency of the city to act as agent for the Health Department to execute the order of abatement should the owner fail to do so (§ 564-20.0); provides for the manner of service upon an owner of an order for such abatement (§ 564-21.0); states that expenses incurred in executing any order shall constitute a lien on the rents due (§ 564-22.0); and authorizes the Department of Health to institute suit against an owner for such expenses (§ 564423.0).
It was discovered however, by the Board of Health, that the procedure set forth in the foregoing chapter of the code as it *40 related to the length of the notice to he given to owners before the Board of Health itself could act to abate a nuisance, might result in a delay that could endanger the public health. Consequently, on January 29,1965 a resolution was passed by the Board of Health.
The resolution designated as public nuisances those dwellings lacking — by virtue of neglect of the owner — certain essential services such as running water, effective sewage disposal facilities, electricity, or heat or which contain other conditions which in the opinion of the department1 ‘ present an immediate danger to the life and health of the occupants.” It further ordered the immediate abatement of such nuisances by those responsible under chapter 22 of the Administrative Code, and, in the event they failed to do so authorized the department to take the necessary steps required to secure such abatement. In this connection antipoverty funds were made available to the city to finance the repairs required by the Board of Health. And, thereafter — pursuant to the Mayor’s Executive Order (No. 134) dated March 19,1965 — respondent was given the responsibility of undertaking an emergency repair program to eliminate such conditions in residential housing where it was found impossible to cause the owners to do so.
The grounds urged by petitioner for declaring the foregoing provisions as unconstitutional have been raised and treated in similar cases involving problems of building law enforcement (see Matter of Farrell v. Drew, 19 N Y 2d 486; Matter of Department of Bldgs, of City of N. Y. [Philco Realty Corp.], 14 N Y 2d 291; Matter of Ten West 28th St. Realty Corp. v. Moerdler, 52 Misc 2d 109).
Essentially, those cases held that a claim of denial of equal protection is not sufficient to declare a law as unconstitutional “ as long as ‘ a reasonable basis ’ exists for differentiating among the members of the same class ” [cases cited] (Matter of Farrell, supra, p. 491). In other words, the selection of one class of landlords for regulation because that one class “ conspicuously offends ” (People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429,447) is not forbidden by the equal protection clause (Matter of Farrell, supra, p. 492).
Neither is it sufficient to predicate an attack on the ground of the impairment of the landlord’s contractual rights. As stated by the Court of Appeals (Fuld, J.) in Matter of Farrell (supra, p. 493): “ ‘ If the legislation * * * is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end ’, this court declared in the Philco Realty case (14 *41 N Y 2d, at pp. 297-298), ‘ it may not be stricken as unconstitutional, even though it may interfere with rights established by existing contracts. (Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 438.) It is “ fundamental ’ ’ * * * that “the state may establish regulations reasonably necessary to secure the general welfare of the community by the exercise of its police power although the rights of private property are [thereby] * * * curtailed and freedom of contract is
abridged.” ’ ” A perusal of the statutes challenged herein reveals that they are reasonably directed toward the correction of the problem of substandard housing and should not be set aside because “ the means devised to accomplish that result may, to some extent, impair the obligation of the landlord’s contract ’ ’ (Matter of Farrell, supra, p. 494).
Finally, petitioner’s argument that the work performed was done without affording it “ an opportunity to be heard as to the merits of its liability” is similarly rejected. It has long since been held that a health nuisance may be summarily abated by the city and the owner compelled to make reimbursement to the city for the cost of its abatement (Gregory v. City of New York, 40 N. Y. 273). Nor is it fatal that a statute may provide for summary abatement of the nuisance without the benefit of judicial process or proceeding. Such summary abatement without the intervention of judicial proceedings has been sanctioned where the circumstances — such as here — warrant its use (Lawton v. Steele, 119 N. Y. 226).
The respondent’s manual of procedure used in connection with the program, however, does provide for sufficient notice to be given the landlord to correct the violation. And in this connection respondent asserts that notice was indeed given to this petitioner. Moreover, the violation was denominated as a “ rent impairing violation ” and it has recently been held — under section 302-a of the Multiple Dwelling Law — that failure to remedy such a violation may even be asserted by a tenant as a defense to a nonpayment dispossess proceeding (Matter of Ten West 28th St. Realty Corp. v. Moerdler, 52 Misc 2d 109, supra). In this situation, a landlord may effectively be deprived of his rents until he corrects the condition.
In view of the circumstances of this case and the problem sought to be remedied, it cannot be said that the provisions under attack and the program based upon them, are unreasonable or inappropriate to secure a legitimate end, namely, safe and sanitary housing. The petition is dismissed.