J. Robert Lynch, J.
The plaintiff, an attorney, has brought this action to recover the value of legal services alleged to have been performed for the defendant. The complaint is stated in quantum meruit and seeks $5,214.87 with interest from June 1, 1962, the date of an alleged demand for payment and the date upon which the plaintiff contends that his cause of action accrued. A bare summons was served on May 29, *632 1968. The defendant contests the merits of the complaint. It also asserts a defense of the six-year Statute of Limitations (see Shaad v Hutchinson’s Boat Works, 40 AD2d 757).
The plaintiff was first employed to act as its attorney by the defendant in 1952 or 1953, as the plaintiff has testified not on any retainer basis, but by being called upon to handle individual matters as they arose. About June, 1958, the defendant, through its officers, asked the plaintiff to do something about its real property tax assessments which it felt were excessive. The plaintiff told the defendant that his fee for handling its assessment problems would be one-half of any first year tax saving he effected at the grievance board level; that, if a tax certiorari had to be prosecuted in the courts, his fee would be at the election of the defendant, either the entire amount of the first year’s tax saving that he accomplished or one half of the first two years’ tax savings.
The plaintiff prosecuted a protest of the 1959 assessment by a tax certiorari proceeding to the point where he obtained a reduction of the assessment in a memorandum opinion from Honorable George T. Vandermeulen, Official Referee, dated March 1, 1960. No order was ever entered upon this opinion to effectuate a tax saving. Instead, the plaintiff used the opinion as a lever against the grievance board to attempt to force a reduction in at least a similar amount, and hopefully a greater amount, with respect to the subsequent years’ assessments. He states that this strategy was approved by the defendant which hoped to obtain a greater reduction than that allowed by the official referee.
Schedule A annexed to the complaint itemizes the work done by the plaintiff on the defendant’s tax problems. It shows that the final work was performed on July 28, 1961, which consisted of the plaintiff’s conferring with the Jefferson County Assessors Office, writing the defendant advising it of the assessment reduction accomplished and writing the chairman of the board of assessors acknowledging its reduction of the assessment.
The plaintiff’s letter to the defendant was actually dated July 31. It summarized his accomplishments: "We have received notification from Mr. Richard Fitchette, Chairman of the Town of Alexandria Board of Assessors that your tax assessments have been reduced for 1962 * * * Since this case commenced, we have obtained a total assessment reduction on Holland Street of $22,600.00 and on the Boat Works of *633 $16,900.00, or a total reduction in assessments of $39,500.00. This represents a tax saving each year of approximately $1,975.00”.
The letter went on to suggest that any further legal proceedings were at least temporarily halted. "I did, however, advise the board that if they granted the above reduction this year, we would not bring a tax certiorari proceeding this year. As I told you, they have discharged their former attorney, and I am sure that they are as anxious as you folks to avoid any future litigation.”
Having been given a summary of the plaintiff’s accomplishments with the implication that there was to be no "future litigation” and having been told that the plaintiff had effectuated a first year tax savings of "approximately” $1,975, the defendant tried to get a bill from him for his services. By letter of October 20, 1961 it asked for a statement of services up to September 1, 1961. (The plaintiff and defendant had other business dealings at the time and the demanded statement was to include all fees for all services rendered up to that date.) This letter also disputed the plaintiff’s assertion that he had saved the defendant $1,975 in taxes.
The plaintiff gave the defendant no written bill. He testified that he gave an oral statement to the defendant reciting the same amount for his services that he later asked in Schedule A annexed to the complaint. At least he says that he thinks he did, because he contends that this was not really a bill in the sense of being a demand for payment, but was merely a statement to show what the defendant owed him so that the latter could include it as an expense in that year’s income tax return which was on an accrual basis, and because he usually gave orally such a figure to the defendant annually. We cannot credit this testimony, nor accept this explanation, because the letters from the defendant to the plaintiff make it obvious that it wanted a bill, and, if it wanted it for its tax return, it also wanted it so it could pay it.
When it had not received such a statement as a result of its October 20 letter, the defendant wrote the plaintiff another letter on November 3, 1961. It stated that the defendant was "very anxious to get the 1961 business straightened out. If I do not hear from you promptly, I will take it for granted that your bill is as outlined in the [defendant’s letter of October 20]”, i.e., based on a claimed tax savings of approximately $1,975.
*634 This letter elicited no response from the plaintiff and on January 26, 1962, the defendant sent the plaintiff a check for $987.50 (one half of $1,975). The plaintiff has never cashed the check nor has he returned it. This cannot be deemed an accord and satisfaction because the defendant, from its letters, never viewed this.as payment in full, but rather as an offer of compromise of a disputed claim which it later withdrew because it felt that, since the plaintiff had never cashed the check, the offer had not been accepted. (Cf. Eames Vacuum Brake Co. v Prosser, 157 NY 289; Hudson v Yonkers Fruit Co., 258 NY 168.)
The plaintiff’s daybook for May 30, 1962 shows that on that day he took a trip to Alexandria Bay to see the defendant "re appl. for ass. red”, that is, regarding an application for assessment reduction. The plaintiff testified that the defendant told him it wanted no further assessment proceedings and asked him to submit a bill. He states that he made up a bill claiming $2,136.95 plus disbursements of $454.87. It recited that its basis was "tax savings for 1961-62: $39,500.00 = 54.10/m X $2,136.95”. The bill was dated June 1, 1962 and contained an itemization of the services rendered and the date each was rendered. A copy of this bill has been annexed to the complaint as Schedule A.
Whether or not this written bill was ever submitted to the defendant prior to the service of the complaint is immaterial to our determination of the efficacy of the Statute of Limitations defense. If it was submitted on or about June 1, 1962, the amount of the tax saving upon which it was based was disputed by the defendant with the same vigor that it had disputed the plaintiff’s prior assertion that he had saved the defendant "approximately $1,975”. However, the letters to the plaintiff subsequent to June 1, 1962 convince us that even this written bill was not delivered to the defendant. The defendant’s letter of October 15, 1962 shows that it was still trying to get a written statement of services from the plaintiff. Its letter of November 11, 1963 shows that all that it had by that time was some oral bill: "I was amazed in our last conversation that you did not live up to our agreement and that you had a bill in some fantastic amount that is undoubtedly out of the question”. As .late as a letter of May 6, 1964, the defendant, then acting through another attorney, was seeking to have the plaintiff advise him of "the amount of your claim for *635 services and perhaps I can assist in getting the matter amicably settled”.
The testimony proves a contract between the parties, "an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent” (Hotchkiss v National City Bank of N. Y., 200 F 287, affd 231 US 50, as restated in Matter of Ahern v South Buffalo Ry. Co., 303 NY 545, 561). We add the proviso that the full intent of the parties must be capable of reasonably certain ascertainment, else the contract alleged would be too uncertain to be meaningful or binding (9 NY Jur, Contracts, § 46, pp 575-576). Here, resort to the circumstances of the meeting between the plaintiff and the defendant, and the statements engendered there, leads inescapably to the conclusion that a binding contract was created. The subsequent interaction of the plaintiff and defendant in processing a review of the tax assessment was an overt manifestation of their mutual assent to the terms of the employment of the plaintiff that they had discussed. (See 9 NY Jur, Contracts, § 17.)
That the proof shows a contract between the parties that is not even alleged in the complaint, which seeks recovery in quantum meruit, is no ground for dismissal. (Noce v Kaufman, 2 NY2d 347; see, also, Blair v New York Univ. Coll, of Dentistry, 15 AD2d 211; Miranda v Boston & Maine R. R., 18 AD2d 1115.)
The plaintiff attempts to counter the defense of the Statute of Limitations by claiming cogency for the events of May 30, 1962; that on that day the defendant told him it wanted no further assessment proceedings and to send a bill. If the plaintiff’s cause of action for fees did not accrue until that date, the. statute is no bar. If it accrued on any date of significance here prior to May 30, 1962, it is barred by CPLR 213. The basis of the plaintiff’s contention is that his attorney-client contractural relationship did not end until May 30 and that he was not entitled to demand a fee until then. This is specious in law and in fact.
While a "cause of action usually accrues to a party to an express contract upon termination of the relationship (Martin v. Camp, 219 N. Y. 170; Ga Nun v. Palmer, 202 N. Y. 483)”, nonetheless, "a cause of action accrues when a payment falls due, even impliedly, as in contracts of hiring for an indefinite period (Davis v. Gorton, 16 N. Y. 255; cf. Carter v. Carter, 36 *636 Mich. 207; Schaffner v. Schaffner, 98 Kan. 167)”. (Haimes v Schonwit, 268 App Div 652, 654, 655.) If the time when payment falls due is ambiguously expressed in the agreement, it must be construed most favorably to the client (Matter of Hawke, 148 App Div 326, affd 204 NY 671).
Concededly, the contract of employment here may have contemplated the strategy of successive annual grievance procedures until the client was satisfied with its assessments, but the agreement did not hinge payment for any successful proceeding upon the completion of all possible proceedings. If it had, the defendant would have been able to avoid paying the plaintiff for his success in lowering the assessment simply by expressing dissatisfaction with the amount and ordering a grievance procedure for the following year. The agreement made the plaintiff’s payment contingent upon his accomplish; ing an assessment reduction in any year with the amount of the fee based upon the first year that that reduction was effective. Thus, if the plaintiff accomplished a step-by-step year-by-year reduction, he would have earned his right to a fee each year based upon the reduction that year from the year before. If the plaintiff accomplished more than one year’s reduction at one time, as it appears that he did here, the fee would have been earned at the date the new valuation became effective, no matter the date to which it related. As far as the right to a fee was concerned, there was no "identifying continuity” from year, to year (3 NY Jur, Attorney and Client, § 83); there was only continuity in the nebulous strategy that there might possibly be another proceeding another year. The plaintiff has testified that he was generally employed by the defendant on a case-by-case basis. His right to a fee was earned on such a basis and, under his agreement, each year in which he achieved a reduction constituted a separate case for which he was entitled to be paid.
When the services rendered are severable and distinct, even though the overall attorney-client relationship continues, the Statute of Limitations will begin to run on each service at the time it is rendered (Adams v Fort Plain Bank, 36 NY 255; 3 NY Jur, supra). The plaintiff, himself, by his bill of June 1, 1962, recognized that his last service for which he seeks recompense was rendered on July 28, 1961. The defendant itself recognized this date by demanding a bill as of that final service. If we were to credit the plaintiff’s testimony of the oral statement following the letter of October 20, 1961, it *637 would be further recognition of the "billability” of the services ending July 28, 1961. The events of May 30, 1962 have no cogency other than that they finally conveyed to the plaintiff that the defendant wanted no new proceedings initiated, a state of mind that the plaintiff should have long before comprehended from the defendant’s letters. Additionally, on that date the defendant simply reiterated its long-standing demand that it wanted a bill from the plaintiff. Even if this be considered a cause of action in which a demand for payment is a condition precedent to accrual, that accrual occurs, not when the demand is actually made, but "when the right to make the demand is complete” (CPLR 206, subd [a]; Dougherty v National City Bank of N. Y., 157 Misc 849).
The defendant’s offers to compromise its dispute with the plaintiff over whether a fee had been earned and its amount, occurring at least up through the letter from its attorney on May 6, 1964, did not toll the Statute of Limitations, since the defendant always disputed its liability for any fee, asserting always that there had been no tax savings. There was never the unqualified acknowledgment of liability which is essential to a tolling of the statute (Levin v Noble, 269 App Div 808: Dougherty v National City Bank of N. Y., supra; see, also, Connecticut Trust & Safe Deposit Co. v Wead, 172 NY 497; cf. Brill v Brandt, 176 Misc 580, affd 263 App Div 811, affd 289 NY 581).
No claim in the pleadings or the evidence has been made here to suggest that the defendant is in any way estopped from claiming that the Statute of Limitations is a bar (cf. Ann. 39 ALR3d 127; 44 ALR3d 482).
We must hold that the plaintiff’s cause of action to recover his attorney’s fees is barred by the Statute of Limitations and his complaint must be dismissed, with costs & disbursements.