OPINION OF THE COURT

Per Curiam.

Order dated November 4, 1977 (Okin, J.) modified by granting defendants’ motion only to the extent of dismissing the first cause of action and, as modified, affirmed with $10 costs.
In August, 1976, plaintiff Housing and Development Administration (HDA) commenced this action against Johan Realty Co., Inc., owner of a multiple dwelling situated at 126 West 137th Street, New York City, and Sydney Snitow, vice-president of the corporate owner, for various forms of relief: a court order directing defendants to correct all outstanding violations of the Housing Maintenance Code (Administrative Code of City of New York, § D26-1.01 et seq.) and the Multiple Dwelling Law; payment of civil penalties for failure to correct 18 hazardous violations and 30 nonhazardous violations; and recoupment of expenses incurred by HDA to effect emergency repairs at the premises. Notices of violation annexed to the complaint describe numerous violations placed against the *700 dwelling during the period February, 1974-May, 1976. Defendants moved to dismiss the complaint on the ground that a fire had destroyed the premises in September, 1976 (approximately one month following the institution of the action), that the premises were untenantable, and that the relief sought by the plaintiff in the nature of removal of violations and civil penalties was therefore academic. Additionally, defendant Sydney Snitow moved to dismiss the complaint as against him on the ground that he was only an officer of the corporate owner, and had no personal liability. Special Term denied the motion to dismiss in all respects and defendants appeal.
Pursuant to article 51 of the Housing Maintenance Code, the Department of Rent and Housing Maintenance may serve notices of violation "upon the owner, his agent or other person responsible for its correction.” (Administrative Code, § D2651.01, subd [b].) If the violation is not removed within stated time periods from the date of mailing of the notice (see Administrative Code, § D26-51.01, subd [c]), and a certification of removal filed with the department (Administrative Code, § D26-51.01, subd [fj), the "owner” is subject to certain civil penalties as provided for "from the date set for correction in the notice of violation until the violation is corrected” (Administrative Code, § D26-51.01, subd [a]). Under the Administrative Code, "[T]he term 'owner’ shall mean and include the owner or owners of the freehold of the premises or lesser estate therein, a mortgagee or vendee in possession, assignee of rents, receiver, executor, trustee, lessee, agent, or any other person, ñrm or corporation, directly or indirectly in control of a dwelling. Whenever a multiple dwelling shall have been declared a public nuisance * * * the term 'owner’ shall be deemed to include, in addition to those mentioned herein-above, all the officers, directors and persons having an interest in more than ten per cent of the issued and outstanding stock of the owner” (Administrative Code, § D26-1.07, subd 45 [emphasis supplied]).
The same definition is contained in subdivision 44 of section 4 of the Multiple Dwelling Law. Defendant Sydney Snitow contends that in accordance with the second sentence of the above-quoted Administrative Code provision, corporate officers may only be deemed to be "owners” when the premises have been declared a public nuisance. This construction, however, overlooks the language in the first sentence, which includes within the definition of the term "owner” any "per *701 son, firm or corporation directly or indirectly in control of a dwelling”. This would include corporate officers to the extent that it could be demonstrated that they were "in control” of the premises. Defendant also based his argument that he bears no liability as a mere corporate officer upon traditional notions of the law of corporations. But as aptly stated by the court below: "The usual exoneration to a corporate officer or director for the obligations and responsibilities of the corporation do not apply to a multiple dwelling in light of the provisions of the Multiple Dwelling Law and the Housing Maintenance Code. Responsibility, duty and liability are visited upon a corporate officer and director by virtue of these special statutes and cases which recognize corporate officer exoneration in commercial situations have no application”.
The Administrative Code definition in question, however, does not restrict responsibility to the record owner, but is drawn so as to encompass various other individuals and entities which will be treated as the "owner” for purposes of code enforcement. The plaintiff refers to this concept as the theory of "multiple ownership” in assigning liability for repair and maintenance of multiple dwellings, and urges that such a concept is necessary in the public interest for the protection of tenants. Of course, it is still plaintiff’s burden to prove that defendant Snitow was in fact a person "in control” of the dwelling. Unlike managing agents, who are responsible for the maintenance and operation of a dwelling by statute (see Administrative Code, § D26-41.03, subd [3]), officers of a corporate owner are not necessarily parties in control of the premises. The complaint makes such an allegation against Snitow, and the answer, in relevant part, merely asserts: "The question as to being a person directly or indirectly in control of the premises * * * is a question of law which is respectfully left for the Court’s determination”. On the motion, defendant’s affirmation made no statement with respect to whether he was or was not a person in control of the premises. In this posture, the motion to dismiss the complaint as against Snitow was properly denied; the complaint states a cause of action against him as an "owner” as that term is defined in subdivision 45 of section D26-1.07 of the Administrative Code.
Another issue raised by the individual defendant is that he cannot be held liable because the notices of violation were not personally served upon him. It appears that all the notices were served upon Mary Snitow (defendant’s mother), the *702 registered managing agent of the dwelling who, we are informed, passed away in March, 1973, prior to the assessment of the violations in issue. It is not clear who succeeded Mrs. Snitow as managing agent. In Housing and Dev. Admin, of City of N. Y. v Bryant Westchester Realty Corp. (90 Misc 2d 816), this court had occasion to pass upon the effect of service of notices of violation. In that case, the HDA sought to enforce civil penalties against a new owner who had taken possession after the violations had been previously served on the former owner. We held that the new owner was subject to liability because it could have searched the HDA’s records and determined the existence of the violations prior to its purchase. Reasoning from the result in that case, it would seem that if a new owner could be held without receiving the notices of violation, then the individual defendant herein, as part of the ownership which has exercised continuous control over the property, could be held liable here, although the notices of violation were not specifically addressed to him. Significantly, the defendant has not denied actual knowledge of the existence of the violations, and it appears that the notices were sent to his mother at 152 West 42nd Street, which is the address of defendant’s own law offices.
Turning to the remaining points raised by the defendants, they take the position that since the premises were destroyed by fire and are presently vacant, that they are no longer liable for civil penalties attributable to violations previously noticed against the premises.
We find it difficult to perceive why a subsequent fire or other condition which renders premises uninhabitable should have the effect of extinguishing a landlord’s accrued civil liability for failure to cure noticed violations charged against the premises long ago — while they were still being occupied by tenants.
With respect to plaintiff’s request for a court order directing defendants to correct the violations still outstanding against the premises, (the first cause of action), defendants are on more solid ground. Concededly, the premises have now been totally vacant since the fire (September, 1976), a period of almost one and one-half years. According to defendants’ affidavit, the building (85 years old) is assessed for approximately $12,500, and it would cost about $75,000-$100,000 to rehabilitate it. Since the premises have been vacant for over 60 days, they cannot be occupied for living purposes until the dwelling *703 is made to comply with all applicable requirements of the Administrative Code and the Multiple Dwelling Law, and until a new certificate of occupancy is obtained (Administrative Code, § D26-35.01, subd a). Under these circumstances, where the cost of removing the violations and restoring the premises is prohibitive, the owner should not be compelled to expend such large amounts in a property which may not warrant same (Rubin v Hevro Realty Corp., 84 Misc 2d 1074).
Concur: Hughes, J. P., Tierney and Riccobono, JJ.