OPINION OF THE COURT
Lewis R. Friedman, J.
On April 19, 1985 a portion of a wall at the premises 341 Broome Street collapsed. The premises was a single-room occupancy (SRO) hotel. As a result of the collapse, the Department of Buildings (DOB) issued a peremptory vacate order pursuant to Administrative Code of the City of New York §§ 643a-1.0, 643a-13.0 and C26-80.0. Approximately 131 residents of the building were vacated and are now living in emergency housing provided by the Red Cross and other agencies.
*352 The DOB has issued a number of violations for the premises as a result of the conditions. The violations range from structural alterations without permits, to bulging and defective brickwork, to cracked, sagging and missing beams. The violations required shoring and bracing among other items. Apparently some shoring work has been done by the owners but the building remains in precarious condition which has required closing portions of Broome Street and the Bowery and the posting of police guards.
At about noon today, May 9, the Department of Housing Preservation and Development (DHPD) sought an ex parte access order and warrant pursuant to New York City Charter § 1803 and the Housing Maintenance Code (Administrative Code, ch 26, tit D). The documents annexed to the request alleged the existence of emergency conditions which warranted access to the premises for inspection and emergency repair. The papers also allege that the owners were notified of DHPD’s request for access and plan for emergency repairs two days ago. The court found the papers in compliance with Administrative Code § D26-53.06 and issued the requested orders and warrant.
By oral application the respondents Cohen and Rosso sought an ex parte stay or modification of the court’s prior orders. The court requested the presence of counsel for DHPD at a hearing which occurred from 4:30 to 6:30 p.m. In the interim counsel for 88 named residents of the premises arrived seeking an order to show cause to commence a proceeding to require the respondent owners to cure the underlying conditions at the premises and for other relief.
The owners’ primary arguments are: jurisdiction is vested with DOB not DHPD; the Building Code rather than the Housing Maintenance Code prevails; the Supreme Court, not this court, has jurisdiction; and repairs are prohibitively expensive in light of the value of the building and, in any event, are impractical.
There is no doubt that under the Building Code (Administrative Code, ch 26, tit C) the provisions of article 8 (§ C26-80.0 et seq.) set forth an extensive set of rules and procedures for implementing DOB’s interests in dealing with unsafe buildings. DOB has appeared before this court, through the Corporation Counsel’s office, and has expressed its view that the Building Code is not exclusive in its treatment of dangerous buildings. The court’s reading of the complex provisions of the City Charter (§ 643) as well as Building Code article 8 finds that there is no language which would preclude another agency from applying the statutes to reach the same underlying condition. The cases *353 cited by the owners are not to the contrary. The rights of survey, hearing, and the like come into play when the DOB starts an unsafe building proceeding or when the city seeks to order the demolition of the buildings. (Cf. Paderefsky v Scala, 129 NYS2d 661 [Sup Ct, Kings County 1954].)
The legislative grant of power to DHPD rests on a different footing. The provisions of the Housing Maintenance Code at issue here do not deal with demolition or, necessarily, with forcing a landlord to make certain repairs. DHPD is given the right to make emergency repairs where “because of any violation of this title or other applicable law, any dwelling or part of its premises is dangerous to human life and safety or detrimental to health” (Administrative Code § D26-54.01 [a]). Despite the owner’s claims at the hearing, that language is clearly worded to include dangers to passersby or others, not merely to residents or occupants who are not even mentioned in the section.
There is nothing inherently wrong with two agencies of the city government having statutory authorizations for similar situations. Moreover, the court finds it difficult to conclude that the owners here should have standing to complain that the “wrong” agency is suing them. The choice of the city agencies between themselves as to which will proceed against an owner is an executive decision which is vested with agencies themselves and not with the target of their action. The court certainly is not authorized to make an executive decision as to which agency should defer to the other; this is particularly so, as here, where the agencies are in agreement with each other and are cooperating in the commencement of the instant proceeding.
The court’s conclusion that the Housing Maintenance Code may be invoked by DHPD removes the respondent’s objections to the Civil Court’s jurisdiction. While Supreme Court may be the appropriate forum for unsafe building proceedings (Administrative Code § C26-82.0), this court has jurisdiction to enforce the Housing Maintenance Code. (CCA 110.)
The precise nature of the relief sought limits the scope of judicial review here of DHPD’s actions. The order for inspection and access was brought under Administrative Code § D26-53.06. The conditions of that section were met and the respondents do not seriously challenge that. This court is authorized to provide access if “entry to such area is necessary for correction of a condition violating such [any State or local] law or regulation.” (§ D26-53.06 [a].) Accordingly, the court will adhere to its original decision to authorize access to the premises.
*354 The Emergency Repair Program (ERP), which authorized DHPD to “correct” dangerous conditions, is not premised on the existence of an outstanding court order or proceeding. That is, there is statutory authority for the DHPD to merely get the repairs done. In this regard this court notes the numerous persons who would freeze to death each winter if DHPD were not authorized to act to remedy dangerous or unhealthy conditions immediately. The statute authorizes immediate first-party action, i.e., repairs done by DHPD or its contractors, or owner action at DHPD order, or court-ordered DHPD repairs upon the owner’s failure to comply with DHPD’s order. The choice of which route to take is, according to the statute, at DHPD’s discretion. The court’s brief research in this matter has failed to disclose any reported case describing the ERP process of decision making and whether this court can or should exercise any control of the matter. No authority was referred to by counsel for any party at the hearing.
The court is troubled by the due process problems engendered by the “act first litigate later” aspects of DHPD’s statutory right to proceed to do repairs without court order or hearing. It should be noted that DHPD here did apparently comply with the provisions giving the owner the right to remedy the conditions before DHPD stepped in. That notification gave respondent an opportunity to have either commenced the work itself or to have commenced an action against DHPD to prevent it from doing the repairs itself. The availability of such a remedy at least provided the respondent with a prework court review. (See, Burtnieks v City of New York, 716 F2d 982 [2d Cir 1983].) The short time frame used here was reasonable in light of the emergency nature of the problem and the possibility of further collapse without the required shoring work. Respondent’s memorandum concedes “The Department of Buildings has power to contract for the shoring up or demolition of a building on an emergency basis.” A fortiori that power extends to DHPD’s rights under Administrative Code § D26-54.01 (a).
This court did not issue an order to authorize DHPD to proceed under section D26-54.03. That could only be done on notice. The court order for access may well allow DHPD to proceed to do repairs but it does so only at its discretion and at what may turn out to be its own risk. That is, if subsequent proceedings between these parties ultimately determine the work not to have been required, there may be no right of recoupment. But those are issues for another day and another proceeding for they are not involved in the instant application. It would therefore be unnecessary for this court to hold an *355 evidentiary hearing on any issue going to the propriety of the repairs at this time.
The court is mindful of the innocent residents whose homes are no longer available. The vacating of the building by virtue of the peremptory vacate order has made them join the growing number of homeless people in New York City. A vacate order issued to insure the safety of the tenants and others should not be used as a pretext for permanently reducing the housing stock. The court has heard no witnesses, yet it has become clear that respondents’ desire is to demolish rather than to restore, to destroy rather than to rebuild. The court finds it difficult to credit the lack of economic feasibility argument when counsel emphasizes the current assessment of $225,000 total, of which $100,000 is for the building and does not deny that its recent purchase of the property involved more than $1,000,000. Judge George’s opinion in Miller v Notre Dame Hotel (NYLJ, Dec. 17, 1980, p 11, col 3) provides a thoughtful analysis of the benefits sought by landlords who find demolition more valuable than restoration. It has become more and more apparent, particularly with respect to SRO units, that demolition is the owner’s ultimate goal. (See, Matter of Vanway Overland Express v Department of Hous. Preservation & Dev., 127 Misc 2d 331 [Sup Ct, Kings County].) Even if the collapse had been fortuitous, and there is certainly some evidence suggesting that it was the result of respondent’s illegal “construction” in the building, respondent should not gain at the expense of the 130 tenants now living in temporary shelters.
The court has been advised that DHPD has, so far, contracted for nothing except for shoring of the premises. While the $95,000 may seem high to some, it may well be an inexpensive way toward restoring a structure’s visibility. The court is not and at this stage cannot pass on the propriety of the amount. Counsel may well bring other proceedings in other courts. This court will not, however, stay or modify the prior order signed today. The residents’ rights are not to be left in limbo pending other parties’ litigation. The court will therefore sign the requested order to show cause so that a formal proceeding will be commenced where the persons with a vital interest in the outcome may be heard.
This shall constitute the order and decision of the court.