OPINION OF THE COURT
Lewis R. Friedman, J.
New York City adopted an Emergency Repair Program (ERP) in 1965 based on the powers of the Department of Health to remove nuisances. In 1971 ERP was revised (Local Laws, 1971, No. 10 of City of New York) to enable the city, when it determines "that because of any violation of this [title] [Housing Maintenance Code (HMC)] or other applicable law, any dwelling or part of its premises is dangerous to human life and safety or detrimental to health” (Administra *262 tive Code of City of New York § 27-2125 [a] [formerly § D2654.01 (a)]), to remove the conditions. The HMC contains a comprehensive scheme for the city’s recoupment of those expenses by (1) creating a lien on the property; (2) permitting levies on rents; and (3) permitting actions against the owners. Major revisions to the recoupment scheme were adopted in 1974 (Local Laws, 1974, No. 48 of City of New York). While the procedures used by the city are not widely known, the liens imposed are familiar to all conveyancers of realty. This series of cases, consolidated only for the purpose of decision, presents several important questions, not previously discussed in the reported cases, the ERP recoupment mechanism.
THE STRUCTURE OF THE STATUTE
It is important to understand the statutes which permit the city to correct dangerous conditions in residential buildings before analyzing the specific problems in these cases.[1]
It has long been the rule that the city may remove dangerous conditions designated as nuisances from real property (see, Lawton v Steele, 119 NY 226, affd 152 US 133) and charge the owner for the costs of removal (Gregory v Mayor of City of N. Y., 40 NY 273, 276; Lane v City of Mount Vernon, 38 NY2d 344, 348-349; cf., City of Buffalo v Dankner, 48 AD2d 572). It may also force the owner to do the removal (Health Dept. v Rector of Trinity Church, 145 NY 32, 45). "The right of summary abatement of nuisances without judicial process or proceeding, was an established principle of the common law long before the adoption of our Constitution” (Lawton v Steele, supra, 119 NY, at 235). That practice has repeatedly been held to be constitutional (Lane v City of Mount Vernon, supra; Matter of 300 W. 154th St. Realty Co. v Department of Bldgs., 55 Misc 2d 37, affd 30 AD2d 351, mod on other grounds 26 NY2d 538).
The common-law power is the basis for several statutory provisions. Thus, the Department of Buildings (DOB) may commence an unsafe building (UB) proceeding in Supreme Court where a building is in imminent danger of collapse or is dangerous to occupants or passersby. (Administrative Code *263 § 26-247 et seq.; see, Various Tenants of 515 E. 12th St. v 515 E. 12th St., 128 Misc 2d 235, 237.) In a UB proceeding, DOB obtains an order requiring the owner to remove certain dangerous conditions; in the event of noncompliance, the city demolishes the structure (see, e.g., Mazelis v Wallerstein, 51 AD2d 579).
The Legislature also provided that DOB could order the owner to repair nuisances and, upon the failure to comply, appoint a receiver (Multiple Dwelling Law § 309 [4], [5], added by L 1962, ch 492). The courts had upheld the predecessor to that section (Adamec v Post, 273 NY 250, 255-257); although, some subsequent amendments concerning lien priority (L 1937, ch 353) were found invalid (Central Sav. Bank v City of New York, 279 NY 266, 278-279, cert denied 306 US 661). The Court of Appeals has held the appointment of a receiver under Multiple Dwelling Law § 309 to remedy unsafe conditions to be a valid exercise of police power (Matter of Department of Bldgs. [Philco Realty Corp.], 14 NY2d 291).
As another alternative to the drastic UB proceeding, which applies only to seriously dilapidated buildings, the Administrative Code had long permitted the Department of Health to designate buildings or conditions in them as nuisances and to order the removal of the condition. Upon failure of the owner to comply, the Department of Health or a designated agency could remedy the condition (see, Administrative Code former §§ 565-15.0 — 564-31.0, 556-10.0; NY City Charter § 563). Those provisions have long been upheld as valid (Matter of Barkin [Department of Health], 189 Misc 358).
Originally ERP was adopted without formal legislative sanction; on January 29, 1965, a very broad resolution was promulgated by the Board of Health. DOB was designated to remove health nuisances which included a lack of heat, hot water, electricity, proper sanitation and the like. Under the recoupment provisions of the Administrative Code, the owner was responsible for the costs of "nuisance” removal; there could also be levies on rents owed by tenants. The ERP structure was found valid as long as, in certain circumstances, the owner received notice to remedy the conditions before the city acted (Matter of 300 W. 154th St. Realty Co. v Department of Bldgs., supra). ERP was originally used to remedy many forms of dangerous conditions in buildings; although some practices, such as hiring striking building service personnel to provide essential services, were found invalid (Matter of Bozart Realty Corp. v City of New York, 65 Misc 2d 55).
*264 The City Council finally adopted the ERP as part of the city’s code enforcement program administered by the Department of Housing Preservation and Development (DHPD) and its predecessor, rather than by DOB and the Corporation Counsel. ERP is now a vehicle for providing repairs and supplies, such as heating fuel, when the owner has abdicated responsibility for the well-being of the structure or the tenants. The program is grounded in the well-founded belief that homelessness can be prevented for those whose "shelter” would be taken by irresponsible, recalcitrant owners. More than a decade before the current homeless crisis, the city understood that small expenditures, on an emergency basis, could be used to assist hapless tenants survive in deteriorating premises.
Once DHPD determines that a threshold condition exists, it may, without court order, do the repairs itself or order the owner to do them (Administrative Code § 27-2125 [a]); alternatively, it may seek a court order (§ 27-2127 [a]) to compel the owner to do the repairs or to authorize DHPD do them (see, Matter of Department of Hous. Preservation & Dev. v Cohen, 128 Misc 2d 351). The choice is a matter of administrative discretion (Bolden v Mayor of City of N. Y., NYLJ, Mar. 3, 1970, at 16, col 3 [Sup Ct, NY County]; Prince v Mayor of City of N. Y., NYLJ, Mar. 12, 1970, at 2, col 3 [Sup Ct, NY County]). The application for a court order permits DHPD to reach the mortgagees and lienors of record, as well as the owner, and gives interested persons the right, with court approval, to post a bond permitting them to do the necessary repairs under court supervision (§ 27-2127 [b], [e], [f]).
Regardless of the method which DHPD utilizes to implement repairs to the premises, "[a]ll expenses * * * shall constitute a debt recoverable from the owner and a lien upon the building and lot, and upon the rents and other income thereof’ (Administrative Code § 27-2128). In the 1971 ERP legislation, the ERP lien, like the former Department of Health lien, was a type of mechanic’s lien; it had priority over all liens and encumbrances except taxes but had a limited duration and was subject to enforcement as a mechanic’s lien (former §§ D26-57.03, D26-57.07). The city found that ERP liens were not being paid. By 1974, only 15% of the $26.7 million spent by the city since 1965 had been recouped (remarks of Mayor, Dec. 17, 1974, Bill Jacket, Records of City Council, Local Laws, 1974, No. 48). The City Council, therefore, amended the law (Local Laws, 1974, No. 48) to make *265 ERP liens more easily collectible. The lien may now be sold, enforced, or foreclosed as a tax lien under the Administrative Code (§ 27-2144 [e]; see, §§ 11-319, 11-401). The statute also permits enforcement of the lien by levy directly on "any person liable for rent or other compensation for the occupancy of premises” (§27-2147 [a]). After a levy DHPD becomes entitled to all past-due rent and future rents as they come due; it may sue the tenant for failure to pay it (§ 27-2147 [a], [b]; cf., 176 E. 123rd St. Corp. v Frangen, 67 Misc 2d 281). Alternatively, after ERP liens exceed $5,000, DHPD may, apparently without court order, appoint its Commissioner as a receiver of the property (§ 27-2148).[2]
The right to challenge the propriety of the lien is limited by statute. Challenges can only be brought by the owner or "a mortgagee or lienor whose mortgage or lien would, but for the provisions of section 27-2144 of this article, have priority over the department’s lien” (Administrative Code §27-2146 [b]); realistically, this precludes actions by lienors subsequent in time to ERP. However, the statute also limits the right to challenge, in any action to enforce or discharge the lien, the "lawfulness of the repair or other work done” and the "propriety and accuracy of the items of expenses” (§ 27-2146 [a]). Issues which were decided, or could have been, in a proceeding for a court order authorizing repairs cannot be relitigated except by a lienor who was entitled to notice of the prior proceeding but was not served and did not appear in that proceeding (§ 27-2146 [c]).
There are also important procedural limitations precluding challenges to DHPD’s charges for the work. DHPD’s certificate that work was done and that it was "necessary and proper” (Administrative Code § 27-2145) is "presumptive evidence of the facts stated therein” (§27-2146 [d]). Further, DHPD may serve the owner "a statement of the expense incurred and a demand for payment thereof’ (§ 27-2129). If the owner does not object in writing to DHPD within 30 days of service of the "statement of expenses” "such owner may not in any subsequent judicial or administrative proceeding contest any item contained in such statement” (§27-2129; see, Department of Hous. Preservation & Dev. v Pirlamarla, NYLJ, Feb. 28, 1983, at 13, col 1 [App Term, 1st Dept]; Department of Hous. Preservation & Dev. v Chestnut, 119 Misc 2d 865). A *266 claim of fraud or mistake may, however, survive (Department of Hous. Preservation & Dev. v Citizens Sav. & Loan Assn., NYLJ, June 2, 1978, at 14, col 2 [Civ Ct, Bronx County]).
As an alternative, and in addition to enforcing its lien against the property, DHPD may bring an action against the owner "for the recovery of any costs, expenses and disbursements incurred by it” under the emergency repair statute (Administrative Code §§ 27-2128, 27-2143; cf., Audubon Equities Co. v Martinez, NYLJ, Mar. 5, 1984, at 13, col 4 [App Term, 1st Dept]). Those proceedings may be brought in this court regardless of the amount in controversy (CCA 110 [a] [2]; 203 [l]; Department of Hous. Preservation & Dev. v Chestnut, 119 Misc 865, 866-870, supra). The instant proceedings are brought pursuant to this section against persons alleged to be owners of property where emergency repairs have been done.
PROCEDURAL POSTURE OF THE CASES
After the service of the summonses and complaints, the respondents answered and served demands for bills of particulars. Petitioner served bills of particulars. Respondents moved for preclusion (CPLR 3042) on the grounds that the responses are grossly inadequate. Petitioner then! moved for summary judgment and the respondents cross-moved for summary judgment. This opinion addresses only the issues raised by the summary judgment motions.[3]
RESPONDENTS AS "OWNERS”
Petitioner asserts that respondents are owners of the properties and are, therefore, responsible for the emergency repairs done on their buildings. The corporate respondents are alleged to be the record owners; the individuals are alleged to be registered managing agents (RMA’s) or corporate officers.
Does the HMC impose personal liability, as owners, on the RMA and corporate officers? The HMC provides that "[t]he term 'owner’ shall mean and include the owner or owners of *267 the freehold of the premises or lesser estate therein * * * agent, or any other person, firm or corporation, directly or indirectly in control of a dwelling.” (Administrative Code § 27-2004 [45]; see, Multiple Dwelling Law § 4 [44]; cf, Administrative Code § 26-403 [f].) Under that definition there may be more than a single "owner”; the courts have held that, in a proper circumstance, there may well be "multiple owners” of property, including the agent (cf., Johnson v Block, 65 Misc 2d 634 [App Term, 1st Dept]).
The RMA is required by the HMC to be "in control of and responsible for the maintenance and operation of such dwelling” (Administrative Code § 27-2098 [a] [3]; see, Amsterdam v Goldstick, 128 Misc 2d 374, rearg granted and determination adhered to 131 Mise 2d 131, affd for reasons stated below 136 Misc 2d 946 [App Term, 1st Dept]). The RMA, who must be an individual, must personally consent to the registration (§ 27-2098 [b]). In light of the statutory degree of control, an RMA is, by operation of law, an "owner” (Housing & Dev. Admin. v Johan Realty Co., 93 Misc 2d 698, 701 [App Term, 1st Dept]; Housing & Dev. Admin. v Bryant Westchester Realty Corp., 90 Misc 2d 816, 818 [App Term, 1st Dept]). The statement in the affidavits on each of the summary judgment motions by the RMA that "I am not now nor have I ever been in control of the subject building” is unavailing to create an issue of fact. By operation of law, the RMA is "in control” of the building; proof of the specific agent’s relation to the property is irrelevant (cf., Gardner v 1111 Corp., 286 App Div 110, affd 1 NY2d 758).
While the HMC grants the RMA plenary authority to control the premises, the RMA shall "authorize, on behalf of the owner, the correction of any emergency conditions or the making of any emergency repairs” (Administrative Code § 27-2098 [a] [3]). One Judge of this court has found that the inclusion of the phrase "on behalf of the owner” precludes the conclusion that, as a matter of law, an RMA is an owner for the purposes of recoupment of ERP expenses (Housing & Dev. Admin. v Bard Mgt. Corp., 78 Misc 2d 359, 361). While this court would agree with that analysis as a matter of statutory interpretation, the Appellate Term has, subsequent to Bard, held that an RMA is an "owner” for the purposes of ERP recoupment (Housing & Dev. Admin. v Johan Realty Co., supra, 93 Misc 2d, at 701; Department of Hous. Preservation & Dev. v Pirlamarla, supra; see, Department of Hous. Preservation & Dev. v Chestnut, supra, 119 Misc 2d, at 866).
*268 Thus, there is no doubt that the RMA may properly be held personally liable as an "owner” without further factual inquiry. The law is different with respect to corporate officers. Respondents, relying on the special rule applicable to buildings which have been declared nuisances (Administrative Code §27-2004 [45]; Multiple Dwelling Law §4 [44]), argue that corporate officers, as such, may not be held liable as "owners”. That argument has previously been rejected by the Appellate Term (Housing & Dev. Admin. v Johan Realty Co., supra, 93 Misc 2d, at 700-701). "[T]he Code contemplates piercing of the corporate veil so that the appropriate city agency may reach persons such as the defendant [an RMA and corporate officer] in these circumstances.” (Department of Hous. Preservation & Dev. v Pirlamarla, supra.) However, the courts have held that there must be a factual inquiry into the degree of control that has been exercised by a corporate officer. "Unlike managing agents, who are responsible * * * by statute * * * officers of a corporate owner are not necessarily parties in control of the premises.” (Housing & Dev. Admin. v Johan Realty Co., supra, 93 Misc 2d, at 701; Housing & Dev. Admin. v Bryant Westchester Realty Corp., supra, 90 Misc 2d, at 818.) Thus, the court cannot grant summary judgment, on the documents submitted by petitioner, determining the liability of individuals sued solely as corporate officers.
THE "STATEMENTS OF EXPENSES”
Petitioner bases its motion for summary judgment on the "statements of expenses” which it asserts it has sent to the respondents in all of these cases. Respondents contest the use of the "statement of expenses” procedure; they also contest service and claim that they have properly responded.
The ERP statute provides that DHPD may serve a "statement of expenses”; if it does so, the "statement of expenses” becomes the equivalent of an account stated (Administrative Code § 27-2129). That is, upon the service of the "statement of expenses”, if no timely objection is raised, the account becomes a binding contract enforceable as such without reference to the underlying transactions (see, e.g., Sea Modes v Cohen, 309 NY 1, 4; Corr v Hoffman, 256 NY 254, 269; UCC 4-406). The burden is on the recipient to examine the statement; upon failure to protest, the recipient is conclusively deemed to have acquiesced (Steingart Assocs. v Sandler, 28 AD2d 801, 803). The courts have rigorously upheld the rule that a *269 recipient who fails to timely respond to an ERP “statement of expenses” is precluded from challenging the contents of the statement (Department of Hous. Preservation & Dev. v Pirlamarla, supra; Department of Hous. Preservation & Dev. v Chestnut, supra, 119 Misc 2d, at 870-873; cf., Department of Hous. Preservation & Dev. v Citizens Sav. & Loan Assn., supra).
. Here, without doubt, there was no timely response. Respondents’ contention that their answers in these actions are the equivalent of responses to the “statements of expenses” is simply wrong. The "statement of expenses” was served in each case on or about October 1, 1986. The proceedings were each commenced in mid-December 1986, more than 70 days later. The answers were not served until late March 1987, more than 160 days after the “statements of expenses” were served. Since the answers were served long after the expiration of the 30 days permitted by section 27-2129, they are legally insufficient. Thus, if the "statement of expenses” procedure was validly used and proper service was made, respondents are precluded from challenging the account.
However, respondents express a more basic objection to the "statements of expenses” as used in these cases — their use as an immediate prelude to litigation is beyond the contemplation of the statute. The legislative history makes it clear that the “statement of expenses” provision, "based upon the procedure governing bank statements and many other periodic forms of account will permit the amount of the debts to be fixed shortly after the work is done and should expedite later proceedings, without denying the owner his right to contest the amount due.” (HDA mem in support, Bill Jacket, Records of City Council, Local Laws, 1971, No. 10.) Normally, many separate work orders and invoices are involved in emergency repairs in any individual building. Thus, a periodic statement of the work done and the balance due, addressed to the “owners”, reasonably permits the detailed records to be dispensed with in reliance on the account. Also, prompt response by the owner permits administrative correction without resort to litigation (see, Department of Hous. Preservation & Dev. v Chestnut, supra, 119 Misc 2d, at 870-871).
It is inherently unfair to use the "statement of expenses” procedure to bar litigation of claims where the “statement of expenses” is not timely. Moreover, when statements of account are not rendered at or near the time the expenses are incurred, they fail to fulfill the legislative purpose proposed by *270 petitioner. The statements do not simplify further accounting or permit "debts to be fixed shortly after the work is done”, as the City Council intended.
The language of the ERP statutes requires immediacy in the use of the procedure. Thus, a statement shall be served "[wjhenever the department [DHPD] has incurred [ERP] expenses” (Administrative Code §27-2129). Similarly, ERP expenses "shall constitute a lien upon the premises when the amount thereof shall have been definitely computed as a statement of account by the department and the department shall cause to be filed in the office of the city collector an entry of the account stated” (§ 27-2144 [b]). Further, entries must be made on the records "[w]ithin thirty days after the issuance of a purchase or work order to cause a repair to be made” (§27-2144 [a]). While no mechanical rule can be discerned from the statute, the court will refuse to give conclusive effect to a "statement of expenses” which is served more than six months after DHPD incurs ERP expenses. In the cases at bar, each statement covers periods in excess of three years; they are all stale.
The court also finds that the "statements of expenses” were not served on the correct persons since the majority of the respondents were not "owners” when the ERP expenses were incurred. The rule that accords finality to "statements of expenses” logically should not apply when the work was performed for a predecessor in interest. The statute permits service of "statements] of expenses” "upon the owner” (Administrative Code § 27-2129). Reasonable interpretation of that language permits service only on persons who are "owners” at the time the ERP work is performed or the expenses are incurred. Also, the statute does not permit service of a "statement of expenses” upon a former "owner”.
Here, the various respondents are not shown to have been "owners” when the expenses were incurred. For example, in HP 2009/86 (Department of Hous. Preservation & Dev. v 849 St. Nicholas Equities), the respondent Morfesis is alleged to have been the RMA from February 20, 1985 to April 15, 1986, the respondent Miller is alleged to have been the RMA from April 15, 1986 to December 1986, while the corporate respondent is alleged to have been the fee owner from February 20, 1985 to December 1986. The expenses were allegedly incurred in large part from early 1983 to February 15, 1985, before any of the named respondents were "owners”. Moreover, according to the papers submitted on these motions, the "statement of *271 expenses” was served on the respondents, including Morfesis, in October 1986, after respondent Morfesis ceased to be an "owner”.
An owner who fails to challenge a "statement of expenses” binds not only itself, but all successors in title (Administrative Code § 27-2146 [c]). However, it is unreasonable for subsequent owners to be required to challenge the propriety of expenses incurred years before they had any connection with the property. Since petitioner can easily serve its "statement of expenses” in a timely fashion, its failure to do so should not be at the expense of subsequent owners. Petitioner’s delays in carrying out its duties should not serve to ease its litigation burden.
Respondents also contend that the "statements of expenses” were not properly served. The statute permits service in the manner set forth in section 27-2095. That section permits service by personal delivery or substituted service at the residence or place of business (§ 27-2095 [a] [1], [2]); alternatively, service may be made by mail on the owner at "the latest business or residence address of such owner as set forth in any registration statement filed by such owner with the department” or on the managing agent at "the latest business or residence address of such managing agent set forth in any such registration statement or designation filed by the owner of such dwelling” (§27-2095 [a] [3] [i], [ii]; emphasis added). The service provisions again support the conclusion that a former "owner” may not be served with a statement of expenses, since no manner for such service is provided. The court notes that the respondents submit no affidavit denying receipt of the "statement of expenses”. The validity of the service need not be resolved at this time.
In sum, the court finds that petitioner may not prevail on its summary judgment motions since the "statements of expenses”, on which they are based, are insufficient.
LIABILITY FOR ERP EXPENSES INCURRED PRIOR TO OWNERSHIP
Respondents assert that they may not be held personally responsible for ERP expenses incurred before they became owners. However, the law seems settled that petitioner may obtain judgments against owners for ERP expenses incurred at the property prior to when they become an "owner”.
The extent of ERP liens are matters of record readily accessible to prospective owners. Indeed, the original City Council draft of the 1974 amendments to the ERP recoupment *272 lien was changed to meet objections by the title insurance industry and to preclude enforcement of the lien unless records were made within 30 days of the work order (report of Comm on Hous & Bldgs, Intro No. 186-A, 2 Proceedings of Council of City of New York, July 9-Dec. 17, 1974, at 1594; see, remarks of Councilman Salman [the sponsor], Dec. 17, 1974, at public hearing on Mayoral approval, at 6, and remarks of Mayor, op. cit., at 8, Bill Jacket, Records of City Council, Local Laws, 1974, No. 48). Today, routine title examination reveals the existence or possible existence of ERP liens against the property. In Housing & Dev. Admin. v Bryant Westchester Realty Corp. (supra, 90 Misc 2d, at 818), the Appellate Term found that as long as there was ready access to city records of code violations (see, Multiple Dwelling Law § 328), personal liability may be placed on "owners” for the removal of violations placed during a period of a prior owner’s interest. The extent of an ERP lien is also readily disclosed to one who is to become an "owner”; the logic of Housing & Dev. Admin, v Bryant Westchester Realty Corp., therefore, requires personal liability for preownership ERP liens.
Thus, in these cases petitioner may sue persons who are owners only for ERP expenses (1) which were incurred while they were "owners” or (2) which had become liens prior to the time they became "owners”.
LIABILITY AFTER AN ADMINISTRATOR, WAS APPOINTED
In each case, this court appointed an administrator for the property pursuant to RPAPL article 7-A. Respondents contend that since they were not "in control” after those appointments, they cannot be held liable for ERP expenses incurred by the administrators.
The court has previously held that an owner is responsible for repairs at a building even though there is an article 7-A administrator acting (Lawrence v Martin, 131 Misc 2d 256). The application of that logic requires that ERP expenses incurred during the administrator’s tenure should be the responsibility of the owner. An administrator is appointed because there are "conditions dangerous to life, health or safety” for longer than five days (RPAPL 769, 770 [1]). The extreme neglect warranting an article 7-A administrator should not insulate the owner for responsibility for the repairs necessarily incurred by the city to remedy the owner’s neglect.
However, the appointment of an article 7-A administrator *273 deprives the RMA and corporate officers of legal "control” of the property. Thus, for the period that administrators have been acting, liability for ERP expenses can be imposed only on the fee owners and not upon the RMA’s.
SERVICE OF PROCESS
Respondents in each case assert that the service of the summons and complaint was defective. On their face, the affidavits of service are sufficient to show service by a proper person (CPLR 313). There is no doubt that respondents’ alleged acts in connection with real property in New York City permits them to be sued in this court even though service was, in some instances, made in New Jersey (CCA 404 [a] [3]). Since the motion papers contain no facts demonstrating improper service, the affidavits of service are not rebutted (Engel v Lichterman, 95 AD2d 536, 539-540, affd 62 NY2d 943). Thus, there is no issue to be decided (Greiff v Liebman, NYLJ, Feb. 10, 1988, at 6, col 4 [App Term, 1st Dept]).
ISSUES IN INDIVIDUAL CASES
Respondents argue that the actions are barred by the Statute of Limitations. This case does not involve the enforcement of ERP liens against the property, only the right to bring actions against the "owners”. It is undisputed that the six-year Statute of Limitations (CPLR 213) applies to ERP expenses. These actions were commenced in December 1986. In HP 2031/86 (Department of Hous. Preservation & Dev. v 849 St. Nicholas Equities), the first ERP expenses sued upon were entered on petitioner’s books in early 1980; in HP 2033/86 (Department of Hous. Preservation & Dev. v 360-368 Lenox Equities), the earliest expenses were entered in 1968 — more than 20 years ago.
The long-established rule in this State is that the addition of any item to an account within the six-year period starts the statute running anew (Tucker v Ives, 6 Cow 193, 195 [Sup Ct 1826]; Smith v Velie, 60 NY 106, 110-111 [1875]). However, that rule has been held to apply only where there is a "true account stated”, where there is a promise to pay a previously disputed amount (Siepka v Bogulski, 164 Misc 831, 832). However, where the "statement of account is simply a reiteration of that concerning which agreement has already been made * * * there is no reason that the statute should begin anew and that the debtor should be deprived of the *274 privilege of claiming the running of the statute from the original due date” (Siepka v Bogulski, supra, 164 Misc, at 832-833; Frucht v Garcia, 44 Misc 2d 52, 55). The "statements of expenses” here fall into the latter category; the Statute of Limitations runs from the date of the underlying expenses, not the service of the "statement of expenses” (Donahue-Halverson, Inc. v Wissing Constr. & Bldg. Servs. Corp., 95 AD2d 953, 954; Gervis v Halsey, 250 App Div 297, 299-300; Shaad v Hutchinson’s Boat Works, 84 Misc 2d 631, 635-637). These actions are barred to the extent that the expenses were incurred more than six years prior to the commencement of the actions. Petitioner is in the same position as other litigants when it comes to enforcing its rights — it must do so within the period permitted by law or be precluded.
In HP 2009/86 and HP 2031/86 respondents assert that there is an accord and satisfaction. Specifically, they refer to "in rem agreements” in which the parties agreed, pursuant to Administrative Code §§ 11-405 and 11-409, to a "payout” over 32 quarters of all real estate taxes and ERP expenses. Such agreements are permitted and a way by which the city often collects tax arrears. The documents submitted on this motion prove that there is such an agreement. Petitioner contends that it may proceed here notwithstanding the agreements.
The court finds that there is no accord and satisfaction. An "in rem agreement” merely precludes the city from enforcing its lien on the property by foreclosure while the agreement remains in effect. Neither the agreements’ terms nor the statutes governing them stay the collection of ERP expenses from those who may be personally liable for them. The ERP statute (Administrative Code § 27-2143) permits an action against the owner notwithstanding any other remedy commenced by the city. The city has not comprised its claim; it has only agreed to refrain from one collection technique.
Respondents in HP 2033/86 argue that the existence of a Supreme Court in rem foreclosure action bars this proceeding, without leave of Supreme Court. That argument is based on the analogy to a mortgage foreclosure action, where leave of court is required before a foreclosing party may sue on the note (RPAPL 1301). The simple answer is that tax and ERP liens are not mortgages governed by the traditional rules of election of remedies on foreclosure (cf., e.g., Equitable Life Ins. Socy. v Stevens, 63 NY 341, 344; Wyoming County Bank & Trust Co. v Kiley, 75 AD2d 477, 480). The statute governing in *275 rem actions does not bar actions on the debt and the ERP statute specifically permits both actions.
Respondents in HP 2034/86 (Department of Hous. Preservation & Dev. v Morfesis) originally argued that the vesting of title in the city pursuant to an in rem tax foreclosure action bars any action on the ERP debt since the transfer of title satisfied the debt. The court need not resolve that troubling issue at this time. The undisputed fact in the last submission to the court is that respondents have redeemed the property by payment of all outstanding taxes and ERP arrears. HP 2034/86 is dismissed.
CONCLUSION
Petitioner’s motions for summary judgment are denied. The court finds that there are triable issues of fact as to the respondent’s liability for ERP expenses which may have been incurred during the relevant periods when they were "owners”. The cross motions for summary judgment are granted only as to HP 2034/86. Otherwise dismissal of the actions is not required.
Petitioner may seek to recoup ERP expenses incurred at these buildings from respondents, who appear to be "owners”. Petitioner asserts that it served notice of the appropriate expenses on the owners. Petitioner, just as any other litigant, must prove its case.

. There have been constitutional attacks on certain ERP procedures (see, Matter of Department of Hous. Preservation & Dev. v Cohen, 128 Misc 2d 351; compare, Ewing v Mytinger & Casselberry, 339 US 594, 599-600); therefore, except as expressly stated, the descriptions in this opinion are not decisions on the validity of any of the procedures.

. See, n 1, supra; cf., Matter of Department of Bldgs. (Philco Realty Corp.), 14 NY2d 291, 301-302; Thompson v Wallin, 301 NY 476, 494.

. The motions to preclude are denied. Thé bills of particulars were defective; however, the court finds that this was not intentional. Further, the demands are patently defective. Petitioner is directed to serve additional bills of particulars complying only with items 1 and 2 of the demands, excluding the request for copies of documents, within 20 days of service with notice of entry of a copy of the order to be entered here. The remainder of each demand improperly seeks discovery, rather than amplification of the pleadings, or relates to "statements of expenses”, which, as held infra, are irrelevant. Those portions of the demands are stricken.