FIRST NATIONAL CITY BANK, Plaintiff, v TARA REALTY CORPORATION et al., Defendants; LONG ISLAND BEEF CO. et al., Respondents; TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, Appellant.

First Department, November 14, 1978

## APPEARANCES OF COUNSEL

*Samuel Kirschenbaum* of counsel (*Brian Michael Seltzer* with him on the brief; *Dreyer & Traub,* attorneys), for appellant.

*Burton Citak* for John Bruno and another, respondents.

*Robert Jay Rapoport* for Long Island Beef Co., respondent.

## OPINION OF THE COURT

Kupferman, J.

The dissenting opinion fairly sets forth the facts in this litigation on priority of liens, and only slight amplification is required.

It appears that the Director of Finance of the City of New York is holding some $96,000 for distribution in accordance with the proper order of priority. The claim of Long Island Beef Co. as supplier for amounts still due from the restaurant known as Danny's Hide-a-way is for some $181,000. The claim of the Brunos, who are close relatives of Mr. Stradella, who operated Danny's Hide-a-way and was the principal in Tara Realty Corporation, which owned the restaurant building, is some $57,000.

If the moneys available are distributed in accordance with the analysis in the dissenting opinion, the bulk thereof would go to the relatives, with the remainder to the Teachers Insurance and Annuity Association of America, which inexplicably loaned some $139,000 on a restaurant building and received a mortgage in connection therewith, and recorded it on October 31, 1974. At that time, a mortgage in the face amount of $100,000 was of record to the supplier and was unpaid and unsatisfied. There was also a side agreement with the supplier, which provided for securing "all sums now due and owing or to become due and owing". We are convinced that with the mortgage of record, the subsequent mortgagee had a duty to make inquiry. The fact that thereafter payments were made on the supplier's mortgage and also of amounts due in connection with the unrecorded side agreement does not alter the situation.

Although the court at Special Term bottomed its determination on the conclusion that "the agreement to secure future advances need not be incorporated in the [recorded] mortgage itself, so long as the agreement, as here, is made prior to the recordation of the junior liens", we base our conclusion on the fact that the unsatisfied $100,000 mortgage of record was in and of itself notice to the subsequent mortgagee under the circumstances of this case, at least as to the amount on the face thereof.

The judgment of Supreme Court, New York County (Fraiman, J.), entered June 16, 1977, granting priority to the defendant Long Island Beef Co., should be affirmed, without costs.

SULLIVAN, J. (dissenting). The sole issue presented is the priority of liens held by a succession of mortgagees. The facts are not in dispute. On March 1, 1973 Long Island Beef Co. and Manhattan Loin Corp. took a mortgage to secure the payment "of an indebtedness in the sum of one hundred thousand ($100,000) dollars" from Tara Realty Corp. As assignee of Manhattan Loin, Long Island has succeeded to all right, title and interest in the mortgage. This mortgage was given to secure a debt of $92,128.07 then due the mortgagees from Danny's Hide-a-way, Inc. The latter, controlled by one Stradella, who was also the principal of Tara, operated a restaurant known as Danny's Hide-a-way. The indebtedness, the payment of which the mortgage was intended to secure, arose out of unpaid invoices for meat supplied by the mortgagees to the restaurant.

The mortgage was recorded on October 17, 1973. Contemporaneously with the execution of the mortgage on March 1, 1973, the mortgagees, Danny's Hide-a-way and Tara entered into a written agreement which provided, *inter alia,* that "the mortgage shall secure all sums now due and owing or to become due and owing to Manhattan and Long Island" from Danny's Hide-a-way. This agreement also provided that, in consideration of the execution and delivery of the mortgage by Tara, the mortgagees agreed to extend credit to Danny's Hide-a-way. This agreement was never recorded. The Tara mortgage did not refer to the unrecorded agreement of the same date nor did it make any reference to Danny's Hide-a-way, Inc., as an obligor or otherwise.

Subsequently, John and Frances Bruno took a mortgage dated April 17, 1974, from Tara on the same property to secure advances. This mortgage was recorded on May 3, 1974. Thereafter, Teachers Insurance took back a mortgage executed October 25, 1974 to secure a loan. This mortgage was recorded on October 31, 1974. At the time both these mortgages were executed and recorded the mortgage of March 1, 1973 in the face amount of $100,000 was still unsatisfied, as of record. Both subsequent mortgages were recorded after the last advance had been made by Long Island and Manhattan Loin. Thus, the issue of whether Long Island and Manhattan Loin were obligated to make the advances—insofar as this bears on the priority of liens—is not before us. (See *Hyman v Hauff,* 138 NY 48; *Ackerman v Hunsicker,* 85 NY 43.)

After the State of New York foreclosed on Tara for unpaid

franchise taxes, Long Island, claiming a balance due of $181,-000 on the "future advances", sought to obtain priority over the subsequent mortgagees with respect to surplus moneys, despite the satisfaction of the $100,000 indebtedness originally secured by the March 1, 1973 mortgage. Payments in excess of $200,000 were eventually made by Danny's Hide-a-way to long Island and Manhattan pursuant to the March 1 agreement. These payments were applied to the oldest outstanding invoices. The referee's report, confirmed at Special Term, found that the subsequent mortgagees were charged with knowledge of the conditions of the March 1, 1973 mortgage, including the terms of the unrecorded agreement.

The March 1, 1973 mortgage, as recorded, referred to neither the contemporaneous unrecorded agreement nor to future advances. It merely disclosed on its face an indebtedness of $100,000. Although the contemporaneous agreement made mention of future advances, the subsequent mortgagees were not put on record notice of the possibility that the $100,000 mortgage was intended to secure a lender who had given an open-ended, revolving line of credit. "[R]espondents are not to be charged with notice of the contents of the mortgage, any further than is set forth in the register, unless actual knowledge of the mortgage is brought home to them." *(Beekman v Frost,* 18 Johns 544, 564.)

A conveyance, defined to include mortgages (Real Property Law, § 290, subd 1), is void against subsequent conveyances when it is not recorded. (Real Property Law, § 291.) "The recording acts charge the purchaser with notice only of matters in the record" *(Doyle v Lazarro,* 33 AD2d 142, 144; citing *Cymerman Bros. v Payne Homes,* 5 Misc 2d 792, affd 4 AD2d 701, affd 4 NY2d 937). Consequently, the subsequent mortgagees "should be protected by the record title of the property * * * and not be bound by any private unrecorded agreement" *(Matter of Mavromatis,* 70 Misc 2d 55, 57; see, also, *Marrin v Monroe,* 222 App Div 251, 255). The subsequent mortgagees were not obliged to look outside the record. The record itself put them on notice only of the existence of a mortgage for $100,000 and made no mention of any mortgage for future advances.

The argument is made that the subsequent mortgagees had a duty to inquire in the face of an unsatisfied mortgage of record and that had they made such inquiry they would have ascertained the true conditions of the March 1, 1973 mort-

gage. Inasmuch as an unrecorded conveyance is void as against a subsequent "purchaser in good faith and for a valuable consideration" who records first, the question here is whether the record existence of an unsatisfied mortgage, of and by itself, impeaches the good faith of the subsequent mortgagees. I believe that it does not. A subsequent mortgagee who is willing, as obviously these mortgagees were, to stand in line behind a prior recorded mortgage of $100,000 should have the right to take the recorded state of facts as to the prior mortgage without an imputation of bad faith because he failed to look further. The subsequent mortgagees were bound by recorded disclosures and were under no duty to search out unrecorded agreements.

The recording statutes protect only those interests that are recorded and only to the extent indicated in the recorded instrument. In this case, Long Island's recorded interest is $100,000. The recorded mortgage was extinguished after the face amount, i.e., $100,000, was repaid. (Indeed, over an additional $100,000 has also been paid.) "When the creditor has received of the debtor moneys, upon the security taken, equal in amount to the sum specified therein, to be secured, whether given for a present debt or for future advances, it becomes satisfied and extinguished" *(Truscott v King,* 6 NY 147, 162).

The cases cited by Long Island are inapposite. In two *(Hall v Crouse,* 13 Hun 557; *Bank of Utica v Finch,* 3 Barb Ch 293), the subsequent incumbrancer was a judgment creditor of the mortgagor, and thus not entitled to the same protections afforded by the recording statute to purchasers in good faith (see *Sullivan v Corn Exch. Bank,* 154 App Div 292). A judgment creditor's legal and equitable interest in the property cannot exceed that of the debtor. In a third, the total of the sums repaid by the mortgagor never exceeded the face amount of the mortgage *(Craig v Tappin,* 2 Sandf 78), and thus the question of whether the mortgage had been extinguished did not arise. Finally, in *Shirras v Caig* (7 Cranch [11 US] 34), it also appears that the sums repaid did not exceed the face amount of the recorded mortgage. Furthermore, *Shirras* involved the interpretation of a Georgia statute. Subsequent to that decision, in 1851, the New York Court of Appeals decided *Truscott v King* (6 NY 147, *supra),* which has never been overruled, thus settling New York law. New York has also since enacted a statute (Real Property Law, §§ 290, 291) which

clearly defines the rights of parties in situations such as the instant case.

Finally, the majority intimates that there is something inequitable in a distribution of surplus moneys to the subsequent lienors because the Brunos are related to Stradella, and Teachers, in loaning money, took as security a mortgage on property already incumbered with unsatisfied mortgages, of record. Such considerations are not pertinent. The special referee found that the Brunos were purchasers for value and had priority over Teachers. The wisdom of Teachers' loan may be a matter of concern for other parties, another day, in another forum, but it cannot be equated here with an absence of good faith. Nor is the question of Teachers' interest in the surplus moneys academic since, even with priority to the Brunos, Teachers would receive $39,381.23.

Since no mortgage for future advances was ever recorded, thus resulting in a lack of notice to the subsequent mortgagees, and since the mortgage as reflected by the recorded instrument has been extinguished by payment, Long Island should be denied priority.

Accordingly, I would reverse the judgment appealed from, deny priority to the Long Island Beef Co., and award the surplus moneys from the foreclosure to the remaining claimants in the order of the recordation of their respective mortgages.

LUPIANO and FEIN, JJ., concur with KUPFERMAN, J. P.; MARKEWICH and SULLIVAN, JJ., dissent in an opinion by SULLIVAN, J.

Judgment, Supreme Court, New York County, entered on June 16, 1977, affirmed, without costs and without disbursements.