(May 9, 2000)

■ HAROLD ROSENBAUM, Respondent, v CITY OF NEW YORK et al., Appellants. [707 NYS2d 410] —Order, Supreme Court, Bronx County (Lucindo Suarez, J.), entered December 14, 1998, granting plaintiff's motion for partial summary judgment discharging the liens of the City of New York and severing the second cause of action for damages and denying the City defendants' cross-motion for summary judgment dismissing the complaint, modified, on the law, to deny plaintiff's motion for partial summary judgment and, except as thus modified, affirmed, without costs.

By this action plaintiff, the owner of premises known as 31-33 Mount Hope Place, Bronx County, seeks a discharge of alleged "improperly placed liens" and damages for slander of title. Plaintiff claims to be a bona fide purchaser for value with respect to work performed by the City of New York at the subject premises prior to his taking title and for which the liens at issue were subsequently filed. On August 31, 1993,

plaintiff purchased the premises for $5,000. He argues that, at the time of purchase, he did not have any knowledge of the repairs performed by the City. As the record shows, an amount totalling $160,000 had been expended for repairs by the City's Department of Housing Preservation and Development (HPD) under its RPAPL article 7-A Financial Assistance Program (FAP). After notice to plaintiff, as record owner, that liens in the amount of $160,000 would be filed against the premises and the passage of more than 30 days for satisfaction of the lien amount, HPD filed a lien against the property, which was registered as due and payable on the City's Department of Finance records as of May 28, 1994.

Plaintiff had been represented by an attorney, Doyle, in the negotiations for the purchase of the property and closing thereon in August 1993. When plaintiff thereafter, alleging waste, moved, *pro se*, to remove the 7-A administrator, the latter was represented by the same Mr. Doyle. Over HPD's objection and with Doyle's consent on the administrator's behalf, the administrator was removed. Defendants successfully moved to disqualify Doyle on the ground that he was an essential witness on the question of plaintiff's standing as a bona fide purchaser. While Doyle, at his deposition, admitted that he had discussed the presence of a 7-A administrator at the premises before plaintiff made his offer to purchase, he denied ever discussing the subject of FAP expenditures with respect to the building.

When plaintiff moved for partial summary judgment seeking discharge of the liens, the City defendants cross-moved for summary judgment dismissing the complaint on the ground of untimeliness. They also argued, given the inconsistencies in Doyle's testimony at his pre-trial deposition, that there were questions of fact as to whether "Doyle knew of the expenditure of 7A Financial Aid funds at the premises prior to plaintiff's purchase." The City defendants also argued that the knowledge of Doyle, plaintiff's agent in the purchase of the subject premises, should be imputed to plaintiff. The IAS Court granted the motion and denied the cross-motion. Both motions should have been denied, and we modify accordingly.

Although it is undisputed that the City defendants failed to follow the procedures contained in Administrative Code of the City of New York § 27-2144 (b) procedures governing article 7-A lien filing and enforcement, which require the filing of "an entry of the account stated" in the office of the City Collector, not having filed the same until after plaintiff's purchase of the property, this record, contrary to the IAS Court's finding, does

not conclusively establish that plaintiff was a good faith purchaser. As plaintiff's pre-purchase title search showed, a lis pendens had been filed against the premises in the proceeding leading to the appointment of a 7-A administrator. Plaintiff's deposition testimony that he did not make any inquiries as to the physical or financial condition of the building itself raises a question as to his actual or constructive knowledge of the true state of affairs. Since Doyle was acting simultaneously as an attorney for plaintiff and the 7-A administrator, his knowledge of the operative events is imputed to plaintiff, his principal. This is so even if Doyle never communicated those facts to plaintiff, since, as this record shows, he was acting within the scope of his agency. (*Center v Hampton Affiliates*, 66 NY2d 782, 784.) The knowledge that the 7-A administrator was using HPD funds on repairs at the premises had been brought to Doyle's attention during the proceeding for the removal of the 7-A administrator. In addition, Doyle is charged with the knowledge that under RPAPL 778, moneys expended for repairs by HPD constitute a lien upon the premises. These circumstances raise questions as to plaintiff's knowledge of HPD's involvement in the building repairs sufficient to warrant a trial.

The dissent concludes that there is no question as to whether plaintiff was a subsequent purchaser in good faith since plaintiff, having acquired title to the property before the liens were filed, is not even a *subsequent* purchaser. While plaintiff may have acquired title to the property before the liens were filed, the lien was created before the formal filing (*see*, RPAPL 778 [1]) and before plaintiff took title to the property. Thus, it is indeed appropriate to question whether, prior to purchasing the property, plaintiff was aware that HPD funds had been expended on repairs and that a lien, although not yet enforceable, had been created with respect to the funds so expended.

The dissent asserts—making an argument not even suggested by plaintiff—that it is illogical to take the position that the City's liens "are effective retroactive to the time of purchase for the purpose of encumbering plaintiff's title," yet ineffective for the purchase of discharge under the terms of an in rem installment agreement between plaintiff and the City. First of all, the dissent distorts the import of the in rem installment agreement between the City and plaintiff by asserting that it settles all outstanding liens between the parties. That agreement did not purport to act as a general release of all liens against the property. It provided for an initial payment and quarterly installments thereafter, commencing on January 1,

1994, stating that "when all payments required under [the] agreement have been made, the property shall be withdrawn from the In Rem Tax Foreclosure Action." There is nothing in the record which shows that the required payments were made or that the liens were discharged. The latter would not occur until, at the earliest, January 1, 1995, "when all payments required under [the] agreement have been made." Since the liens which are the subject of this action were placed against the property on or about May 28, 1994, prior to January 1, 1995, they were not discharged by the in rem installment agreement.

In any event, our conclusion is not that the liens "are effective retroactive to the time of purchase for the purpose of encumbering plaintiff's title," but rather, as noted, that, in view of the fact that the lien was created before the formal filing, it is appropriate, in deciding whether plaintiff was a subsequent purchaser in good faith, to consider whether, prior to his purchase of the property, plaintiff was aware of the expenditure of HPD funds.

The dissent argues that RPAPL 778 (1)'s reference to the "owner" with respect to the debt that gives rise to the automatic lien is limited in application to the owner at the time of the repairs. The statutory "owner," however, includes, upon a timely and proper filing of the lien, a subsequent owner, as Administrative Code § 27-2144 (b) expressly recognizes: "[N]o lien created pursuant to this chapter shall be enforced against a subsequent purchaser in good faith or mortgagee in good faith." Thus, section 27-2144 gives tacit recognition of the lien's enforceability against a subsequent purchaser who does not qualify as a good faith buyer.

Nor is there any merit to the dissent's further argument that RPAPL 778's automatic lien violates plaintiff's State constitutional due process rights. The short answer is that, if plaintiff is not a subsequent purchaser in good faith, he acquires no greater rights in the property than his assignor, who had notice of the proceedings and an opportunity to be heard in opposition to the expenditures. The dissent's citations in support of this argument (*Matter of Department of Bldgs. [Philco Realty Co.]*, 14 NY2d 291, 299-300; *Matter of City of New York v Chmielewski*, 29 AD2d 862) are inapposite. Each of these cases dealt with the effect of the appointment of a receiver of rents for the purpose of remedying conditions of disrepair at the subject premises with respect to a mortgagee whose perfected lien, to a limited extent, would be subordinated to the lien for repairs. Needless to say, the interest of the mortgagee, in such

circumstances, would squarely implicate due process concerns. For the reasons already expressed, such concerns are not at issue here.

We reject the City defendants' argument that this action should be dismissed as barred by the four-month Statute of Limitations applicable to CPLR article 78 proceedings. Plaintiff was not constrained to bring this matter in the nature of an article 78 proceeding. The applicable time limitation for a slander of title action is one year (CPLR 215 [3]; *see, Hanbidge v Hunt*, 183 AD2d 700). This action was commenced well within the one-year period. Concur—Sullivan, P. J., Tom and Buckley, JJ.

Rubin and Saxe, JJ., dissent in a memorandum by Rubin, J., as follows: This action involves the so-called "super lien" provision of section 27-2144 of the Administrative Code of the City of New York. The municipal defendants seek to enforce against the purchaser of real property liens that were filed against the subject premises some nine months after title was acquired. While the municipal defendants (collectively, the City) are correct in their contention that the buyer is not a subsequent good faith purchaser for value, the salient fact is not that the purchase was made in bad faith, but that plaintiff's purchase was simply not *subsequent* to the recording of the liens. Because title was acquired before the liens became effective pursuant to statute, the question of plaintiff's good faith is immaterial to the enforceability of the subsequently acquired security interest. Moreover, the City entered into an in rem installment agreement with plaintiff prior to placing the liens against plaintiff's property. Although asserted in his complaint, the City has not addressed the scope of this agreement and, on appeal, does not contest Supreme Court's conclusion that it "purported to settle all outstanding liens." In any event, the City cannot logically contend that its liens are effective retroactive to the time of purchase for the purpose of encumbering plaintiff's title but are simultaneously ineffective for the purpose of discharge under the terms of the in rem agreement.

By deed dated August 31, 1993, plaintiff Harold Rosenbaum purchased premises known as 31-33 Mount Hope Place, Bronx County, for $5,000 at a sale approved by Bankruptcy Court. The title report disclosed, among other items, a notice of pendency of a summary proceeding "to correct pending housing violations."

In 1991, pursuant to RPAPL article 7-A, an administrator by the name of Dennis Henriques had been appointed by the Housing Part of Civil Court (Trussel, H.C.J.), with the finding

that conditions dangerous to life, health and safety existed at the premises. The Department of Housing Preservation and Development provided funds for plumbing, electrical and masonry work pursuant to the Department's 7-A Financial Assistance Program. These funds were the subject of extensive litigation by a former owner, who obtained an injunction against their disbursement by alleging that waste was being committed by the 7-A administrator. During the course of this dispute, the administrator was represented by Michael Doyle, who subsequently represented plaintiff in negotiations leading to his purchase of the property and at the closing of title.

Approximately two months after he acquired the property, plaintiff brought a *pro se* motion for the removal of Mr. Henriques as 7-A administrator. On December 17, 1993, Civil Court granted the motion on consent of counsel for the 7-A administrator, who was again represented by Michael Doyle. In the interim, on November 10, 1993, plaintiff and defendant New York City Department of Finance entered into an in rem installment agreement for the payment of $64,000 with respect to noticed liens for real estate taxes, water, sewer rent and emergency repairs. Thereafter, in March or April of 1994, the Department of Housing Preservation and Development notified plaintiff that if the amount advanced by the Financial Assistance Program for repairs effected by the 7-A administrator was not repaid within 30 days, liens would be filed against the premises in an amount totaling $160,000. Liens in this amount were subsequently registered as due and payable on the records of the New York City Department of Finance on May 28, 1994. The record contains a "Bill for Real Estate Taxes, Water, Sewer Rent and Assessments" dated March 1, 1995 listing the three liens in question, together with other taxes and assessments. This document lists no outstanding balance due under the in rem installment agreement, and the municipal defendants do not allege that plaintiff has failed to fully comply with its terms.

Plaintiff commenced this action to discharge the three liens, which he alleged to have been "improperly placed" against his property, and for damages, costs and attorney's fees. Plaintiff contended that, at the time he acquired title, he was without knowledge of the repairs performed by the City or the resulting liens. It is undisputed that defendants failed to timely enter the order for the work performed at the premises in records maintained by the Department so as to "constitute notice to all parties" in accordance with Administrative Code § 27-2144 (a), entitled "Lien on premises." Plaintiff's moving affida-

vit stated that a title search obtained in connection with his purchase of the property disclosed that none of the liens were in place and that defendants had conceded as much. The matter is before this Court on defendants' appeal from an order of the Supreme Court that granted plaintiff partial summary judgment to the extent of vacating the liens on the ground that he is a bona fide purchaser, severing the remainder of his action and denying defendants' cross motion to dismiss the complaint.

On appeal, the municipal defendants advance a simple argument. Relying on RPAPL 778 (1), they contend that a lien in favor of the Department of Housing Preservation and Development arose upon its extension of funding to remedy conditions at the premises. The statute provides that "moneys expended by the department * * * shall constitute a debt recoverable from the owner and a lien upon the building and lot, and upon the rents and other income thereof." Defendants contend that failure to comply with the statutory provisions for enforcement of the lien "in accordance with * * * article eight subchapter five of the housing maintenance code of the City of New York" (Administrative Code § 27-2145) is without legal significance. Their position is that, "as of February 25, 1993, HPD expended a total of $160,000 on repairs at the premises pursuant to Article 7-A of the RPAPL. Accordingly, as of that date, HPD had liens against the subject premises totaling $160,000." Defendants argue that the delay in recording the liens with the Department of Finance until May 28, 1994 "affected the enforceability of the liens. It did not affect [their] existence."

It is defendants' position, therefore, that the liens sought to be enforced against the premises owned by plaintiff arose by operation of law (RPAPL 778 [1]), and that only their enforcement pursuant to the Administrative Code was delayed until the filing of the liens in May of 1994. In any event, they contend that plaintiff had sufficient information from the lis pendens alleged to have been filed in connection with the administrator's appointment (RPAPL art 7-A) and from the knowledge of his attorney, gained during his representation of the 7-A administrator, to require plaintiff to investigate further. In the absence of any demonstration that the purchaser took title without at least constructive knowledge of the potential claim against the property, defendants conclude that plaintiff is not a good faith purchaser for value.

The concept of a lien without reference to its enforceability is an abstraction that need not detain us. The operative question before this Court is whether plaintiff, the current owner of the

premises, must bear the obligation to repay the debt incurred by his predecessor or, absent repayment, sustain the diminution in the value of his property by a comparable amount as the result of the imposition of the liens championed by the municipal defendants. The notion of a lien divorced from any consideration of the person or entity against whom it is enforceable adds nothing to this discussion.

The statutory language relied upon by defendants (RPAPL 778 [1]) contemplates that repair funds comprise "a debt recoverable from the owner." However, this language obviously refers to the current owner, whose mismanagement of the property resulted in the need for the expenditure by the City agency. It does not presume to make the debt recoverable from any other party. The same sentence makes reference to a "lien upon the building and lot, and upon the rents and other income thereof." However, the statute is not self-enforcing, providing no mechanism for recording the statutory lien against the property. Recovery for work performed is restricted to income derived from operation of the premises by the court-appointed administrator (RPAPL 778 [1] [a]), and recovery for liens against the premises is limited to "outstanding emergency repair liens filed and recorded by the city of New York" (RPAPL 778 [1] [d]).

To the extent that the lien may be said to arise automatically—that is, by operation of RPAPL article 7-A—it is enforceable only against the owner who necessitated the expenditure by the 7-A administrator, who acts as an officer of the court. The reason for this limitation is constitutional. The impairment of the property right represented by the lien is ineffective against a party who has been afforded "no opportunity to be heard as to the reasonableness of the proceeding or the expenses" (*Central Sav. Bank v City of New York*, 279 NY 266, 275). To enforce the obligation, it is essential that the person or entity to be held responsible for the debt have notice of the proceedings and an opportunity to be heard in opposition to the expenditure (*Matter of Department of Bldgs. [Philco Realty Co.]*, 14 NY2d 291, 299-300; *Matter of City of New York v Chmielewski*, 29 AD2d 862). It is readily apparent that extension of the "automatic lien" to a future owner, as proposed by the municipal defendants, would violate the due process rights of plaintiff, as guaranteed by article I, § 6 of the New York State Constitution (*Central Sav. Bank v City of New York*, *supra*, at 275; *Matter of Coates*, 9 NY2d 242, 249, *appeal dismissed sub nom. Coates v Walters*, 368 US 34). Therefore, while the statutory language may be amenable to the meaning

ascribed by defendants, the Court is obliged to avoid a construction that renders it unconstitutional (*People v Finkelstein*, 9 NY2d 342, 344-345; *Matter of Coates, supra,* at 253).

As defendants concede, "The enforceability of the liens is controlled by § 27-2144 of the Administrative Code," which provides: "b. All expenses incurred by the department for the repair or the elimination of any dangerous or unlawful conditions therein, pursuant to this chapter or any other applicable provision of law, shall constitute a lien upon the premises when the amount thereof shall have been definitely computed as a statement of account by the department and the department shall cause to be filed in the office of the city collector an entry of the account stated in the book in which such charges against the premises are to be entered. Such lien shall have a priority over all other liens and encumbrances on the premises except for the lien of taxes and assessments. However, no lien created pursuant to this chapter shall be enforced against a subsequent purchaser in good faith or mortgagee in good faith unless the requirements of subdivision a of this section are satisfied; this limitation shall only apply to transactions occurring after the date such record should have been entered pursuant to subdivision a and the date such entry was made." Defendants admit that "the requirements of subdivision a" were not satisfied, but contend that the lien is enforceable against plaintiff because he is not "a subsequent purchaser in good faith." They argue that, given the association among plaintiff, his attorney and the 7-A administrator, plaintiff had notice of the potential claim against the premises sufficient to require him to make further inquiry. Additionally, they assert that the notice of pendency of the proceeding that ultimately resulted in the appointment of the 7-A administrator "constitutes constructive notice of the proceeding leading to the imposition of the lien against the premises."

Plaintiff notes that the lis pendens relied upon by defendants was filed in a proceeding involving a heat and hot water complaint and makes no mention of the appointment of a 7-A administrator. In addition, Supreme Court found that an in rem installment agreement dated November 10, 1993 "between plaintiff and the City purported to settle all outstanding liens."

As the Court of Appeals has observed, "the primary purpose of the notice of pendency procedure set forth in CPLR article 65 is to furnish a substitute for actual notice of pending litigation" (*Da Silva v Musso*, 76 NY2d 436, 442, *revg* 150 AD2d 73). If, as in *Da Silva* (*supra*), actual knowledge of pending litigation will not impair the title of one who subsequently purchased

the premises, constructive knowledge is certainly insufficient. As an additional consideration, "The recording statutes protect only those interests that are recorded and only to the extent indicated in the recorded instrument" (*First Natl. City Bank v Tara Realty Corp.*, 64 AD2d 460, 464 [Sullivan, J., dissenting], *revd* 48 NY2d 793 *for reasons stated in dissenting opn*). As this Court observed, a party "should have the right to take the recorded state of facts as to the [instrument] without an imputation of bad faith because he failed to look further" and is under "no duty to search out unrecorded agreements" (*supra*, at 464). The title search obtained by plaintiff prior to purchase does not disclose the expenses that were reduced to the liens at issue in this case. A document entitled "Tax Search" lists only taxes, water and sewer charges due for the years 1992/1993 and 1993/1994 and assessments for emergency repairs performed during the course of 1991.

Even if a notice of pendency of a proceeding "to correct pending housing violations" could be said, by implication, to afford notice that a 7-A administrator might be appointed, it hardly follows that the cost of any repairs that might be undertaken will invariably exceed the rent receipts and that funds will therefore be sought and received from the Department of Housing Preservation and Development (RPAPL 778). Moreover, if plaintiff were to be charged with knowledge that $160,000 was expended in connection with repairs effected by the 7-A administrator, the City, which advanced the funds, maintained the records and obtained the in rem agreement from plaintiff, would be similarly chargeable. Thus, if plaintiff is to be charged with knowledge of the liens for purposes of enforcement, the City is similarly to be charged with knowledge of the liens for purpose of their discharge by way of the in rem installment agreement settling outstanding liens. It is clear from the tax search performed by the title company and the bill for taxes and assessments dated March 1, 1995 that emergency repairs and the liens representing money expended therefor constitute "assessments" for the purpose of the in rem agreement settling "delinquent taxes, assessments and other legal charges" (Administrative Code § 11-309 [b]; §§ 11-316, 11-401 [1], [4] [ii]; *see, Department of Hous. Preservation & Dev. v 849 St. Nicholas Equities*, 141 Misc 2d 258, 264-265).

The lien enforcement provision relied upon by defendants (Administrative Code § 27-2144 [b]) is a recording statute. Under its terms, the "expenses incurred by the department * * * shall constitute a lien upon the premises when the amount thereof shall have been definitely computed * * * and

the department shall cause to be filed in the office of the city collector an entry of the account stated." It is uncontested that the Department of Housing Preservation and Development failed to comply with the provisions of subdivision (a) of the statute and, therefore, this matter is subject to the provision of subdivision (b) providing that "no lien created pursuant to this chapter shall be enforced against a subsequent purchaser in good faith." The parties are in accord that their dispute is governed by this statute. The controversy turns on the meaning to be ascribed to its language.

By express provision, the lien "created pursuant to this chapter" arose "when * * * the department * * * filed * * * an entry of the account stated" with the New York City Department of Finance. This filing took place on May 28, 1994. Pursuant to the statute, plaintiff is not a "subsequent purchaser in good faith" not because, as defendants contend, his good faith has not been demonstrated, but because he is not a *subsequent* purchaser, having acquired title to the premises nine months before the filing of the liens. For obvious reason, the governing statute does not contemplate the enforcement of a lien against a prior purchaser because the purchaser is only bound by "actual notice before or at the time of his purchase" (*Buffalo Academy of Sacred Heart v Boehm Bros.*, 267 NY 242, 250). While defendants attempt to avail themselves of the "exceptional circumstances" qualification to this rule (*supra*, at 250), such circumstances will not render liens effective nunc pro tunc and, thus, will not overcome the failure to file the subject liens prior to plaintiff's purchase of the premises. Simply stated, no amount of exceptional circumstances will suffice to put a purchaser on notice of an interest that has not yet come into existence (*Department of Hous. Preservation & Dev. v Ferranti*, 212 AD2d 438, 439; *see also, Matter of State Tax Commn. v Shor*, 43 NY2d 151, 157). In both cases relied upon by defendants, the professed good faith purchaser had actual knowledge of a prior contract of sale in favor of another vendee that expressly made any subsequent transfer contingent upon its cancellation (*Yen-Te Hsueh Chen v Geranium Dev. Corp.*, 243 AD2d 708, 709; *United Matura Realty v Reade Indus.*, 155 AD2d 660, 662, *lv dismissed* 76 NY2d 889). By contrast, defendants' advancement of funds on behalf of a previous owner represents a claim against the former owner, personally. The claim is merely a chose in action that does not ripen into a security interest in the premises until such time as the statutory prerequisites for recording the interest are fulfilled.

Defendant Department of Housing Preservation and Develop-

ment enjoys the advantage of a "super lien" that arises prior to obtaining judgment against the property owner, merely upon the computation of an amount owed and the entry of that sum, either in its own records within 30 days or, thereafter, on books maintained by the City Collector (Administrative Code § 27-2144 [a], [b]). The lien is superior in priority to a previously recorded mortgage (Bagwell, *New York City 'Super Liens', How they Arise, Take Priority*, NYLJ, Aug. 9, 1999 [Land Title Trends Supp], at S1, col 4) and is not extinguished by a mortgage foreclosure sale (*Department of Hous. Preservation & Dev. v Ferranti, supra*, at 438-439). Given the significant advantages, unknown at common law, over competing interests held by others, the priority enjoyed by defendants should not be enlarged by judicial interpretation but should be strictly construed to limit the municipal defendants to the rights specifically granted in the legislation (*Matter of 440 E. 102nd St. Corp. v Murdock*, 285 NY 298, 304, citing *Matter of Monument Garage Corp. v Levy*, 266 NY 339). Notably, Administrative Code § 27-2144 (b) gives the super lien "priority over all other liens and encumbrances on the premises except for the lien of taxes and assessments." While this language applies, by its terms, to the previously acquired interest of a mortgagee, it does not extend to a previously acquired interest of an owner in fee.

One other point deserves mention. At last count, there are nine City agencies with super lien powers (Bagwell, *New York City 'Super Liens', op. cit.*). The provisions governing at least some of these agencies include language to the following effect: "Within thirty days after the issuance of a purchase or work order to cause such work to be done, entry of such order shall be made on the records of the department. Such entry shall constitute notice to all parties" (Administrative Code § 17-151 [a] [Department of Health]).

One of the salutary purposes of a recording act or filing requirement is to furnish a prospective buyer with notice of an incumbrance on title or other facts that bear on the disposition and use of the property (*e.g., Da Silva v Musso, supra*, at 442 [notice of pendency]; *Buffalo Academy of Sacred Heart v Boehm Bros., supra*, at 250 [restrictive covenant]; *Matter of State Tax Commn. v Shor*, 43 NY2d, *supra*, at 156 [judgment lien]). The recording of the amount of a disbursement on the books and records maintained by a municipal department is notice only because the Administrative Code so provides; and that notice is reasonable only if the courts so hold. Where an obligation is recorded in one place, such as a judgment docketed in the

County Clerk's Office, it is reasonable to construe it as notice (*e.g., Andy Assocs. v Bankers Trust Co.*, 49 NY2d 13, 21). But where a potential purchaser must canvass the internal records of various City departments to glean such knowledge, the reasonableness of the procedure is far from conclusive. It would therefore behoove the City to provide for the recording of its liens in a central register (preferably with the County Clerk) to obviate the risk that its methods will be found to offend the reasonable notice requirement of procedural due process (*see, Matter of McCann v Scaduto*, 71 NY2d 164; *see also, Mullane v Central Hanover Bank & Trust Co.*, 339 US 306, 314-315; *Sharrock v Dell Buick-Cadillac*, 45 NY2d 152, 163).

Accordingly, the order of the Supreme Court should be affirmed.